IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT EYLER,<br><br>               Plaintiff,<br>v.<br><br>SPORTS AND EXHIBITION AUTHORITY OF PITTSBURGH AND ALLEGHENY COUNTY,<br><br>               Defendant. | Case No.  2:21-cv-1627<br><br>COMPLAINT |

## INTRODUCTION

1. Plaintiff Robert Eyler ("Plaintiff") brings this action against the Sports and Exhibition Authority of Pittsburgh and Allegheny County ("Defendant" or "SEA"), alleging violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq*. ("ADA") and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*. ("Section 504") and their implementing regulations, in connection with accessibility barriers in the parking lots and paths of travel surrounding PPG Paints Arena (the "Arena").

2. Plaintiff, who has been a Pittsburgh Penguins season ticket holder for over thirty years, has a mobility disability and is limited in the major life activity of walking, which has caused him to rely on a wheelchair for mobility.

3. Defendant is a local governmental authority that owns, controls and/or leases facilities throughout Allegheny County such as Heinz Field, PNC Park, David L. Lawrence Convention Center, and PPG Paints Arena – the Penguins' home venue. [1]

---

[1] *See* Sports and Exhibition Authority of Pittsburgh and Allegheny County, *What's New*, http://www.pgh-sea.com/ (last accessed: November 9, 2021).

4. Pursuant to the ADA and Section 504, SEA is required to meet minimum legal accessibility requirements at its facilities, such as the Arena, which include, *inter alia*, accessible parking lots and spaces, and accessible routes and paths of travel.

5. Plaintiff has visited the Arena on dozens, if not hundreds, of occasions, and has invariably been denied full and equal access as a result of Defendant's inaccessible parking lots and paths of travel.[2]

6. As an example, SEA fails to ensure that the Arena has adequate accessible parking spaces, signs, and accessible routes to and from parking areas to the Arena.

7. Plaintiff frequently attends Penguins games at PPG Paints Arena and intends to continue to do so. However, unless Defendant is required to remove the access barriers described herein, and is required to modify its policies and practices so that access barriers do not reoccur in the future, Plaintiff will continue to be denied full access to the parking lots and Arena, and will continue to be deterred from visiting the Arena.

8. Because of SEA's discrimination, Plaintiff is unable to fully and safely enjoy educational, cultural, and recreational experiences offered at the Arena.

9. Plaintiff brings this action seeking declaratory judgment that Defendant is in violation of the ADA and Section 504, and enjoining Defendant to modify its policies and procedures to ensure its facilities are accessible to individuals with mobility disabilities.

## JURISDICTION AND VENUE

10. This Court has federal subject matter jurisdiction pursuant to 29 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and Section 504.

---

[2] As of this filing, Plaintiff had most recently visited the Arena on November 4, 2021.

11. Plaintiff's claims asserted herein arose in this judicial district, and Defendant resides in this district and does substantial business in this judicial district.

12. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1) in that this is the judicial district where Defendant resides, and under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

13. Plaintiff Robert Eyler is and, at all times relevant hereto, was a resident of Allegheny County, Pennsylvania.

14. Plaintiff uses a wheelchair and is limited in the major life activity of walking. He is legally disabled and a member of a protected class under the ADA and Section 504.

15. Defendant Sports and Exhibition Authority of Pittsburgh and Allegheny County is and, at all relevant times hereto, was a joint authority formed by the local governments of the City of Pittsburgh and Allegheny County that is organized under 16 Pa. Cons. Stat. § 5505-A, *et seq*. The SEA provides "educational, cultural, civic, and social events for the benefit of the general public."[3]  The SEA receives federal grants yearly to assist it in its mission.[4]

16. SEA owns, controls, and leases several facilities in Pittsburgh, including PPG Paints Arena and its adjacent parking lots.

---

[3] Sports and Exhibition Authority of Pittsburgh and Allegheny County, *SEA History*, http://www.pgh-sea.com/index.php?path=about-sea-history (last accessed: November 9, 2021).

[4] Maher Duessel, *Sports & Exhibition Authority of Pittsburgh and Allegheny County Single Audit*, Dec. 31, 2020, http://www.pgh-sea.com/userfiles/SEA_SA_FINAL_2020.pdf (listing nonoperating revenue from federal grants that amount to $11,617,000 in 2020, $4,597,000 in 2019, and $224,000 in 2018).

## **FACTUAL ALLEGATIONS**

### **SEA Does Not Provide Accessible Parking at PPG Paints Arena**

17. SEA controls and operates PPG Paints Arena for the benefit of the general public. This includes offering various sporting, cultural, and musical exhibitions at the Arena that anyone from the general public with a ticket can attend.

18. Although the activities conducted at the Arena are purported to be for the benefit of all individuals, SEA does not provide safe and easily accessible parking spaces and accessible routes for people with mobility disabilities at the Arena's parking lots.

19. SEA has failed, and continues to fail, to create and implement a plan that would assess the current state of accessibility at the Arena, and remedy any barriers to make the Arena entirely and readily accessible to those with mobility disabilities.

20. The facilities at issue at the Arena include parking areas and paths of travel therefrom.

21. The SEA is, and has been, under the long-standing requirement to affirmatively provide safe accessibility for persons with disabilities. *See* Title II of the ADA and the 2010 ADA Standards for Accessible Design ("2010 Standards"); *see also,* Section 504 of the Rehabilitation Act.

22. These accessibility requirements apply to the Arena and its surrounding parking facilities.

23. The SEA has included information regarding ADA accessibility on its website, and directs users to click on a facility (such as the Arena) for more information about accommodations

4

specific to that facility.[5] The link connected to the Arena directs users to a separate website describing the Arena's accommodations ("Arena Website").[6]

24. The Arena Website states that "PPG Paints Arena recognizes the needs of persons with disabilities . . . [and] provides a full range of accommodations for guests with disabilities . . . ." As to parking, it states "[a]ccessible parking is available in a number of lots near PPG Paints Arena. These lots include the East Lot, North Lot, South Lot and West Lot."

25. Upon information and belief, the Arena's parking facilities are not accessible to individuals with mobility disabilities, as experienced by Plaintiff and subsequently confirmed by Plaintiff's investigators.

26. The parking areas serving the Arena have, for example, purportedly accessible parking spaces and access aisles[7] with excessively sloping surfaces, inadequate or missing signage, and no van accessible spaces.

**PPG Paints Arena's Deficiencies Caused Harm to Plaintiff**

27. The sheer volume and types of accessibility barriers at the Arena create unnecessary difficulty, delay, frustration, and risk of injury to Plaintiff.

28. For example, Plaintiff must frequently use purportedly accessible parking spaces and access aisles with steeply sloped surfaces, making loading and unloading from his van unnecessarily difficult and dangerous.

---

[5] Sports and Exhibition Authority of Pittsburgh and Allegheny County, *ADA Information*, http://www.pgh-sea.com/index.php?path=info-ada (last accessed: November 9, 2021).
[6] PPG Paints Arena, Accessibility Accommodations, http://www.ppgpaintsarena.com/events/adaseating (last accessed: November 9, 2021).
[7] The term "access aisle" refers to an area adjacent to an accessible parking space, usually marked with diagonal lines so as to discourage parking, that a person with limited mobility can use when entering and leaving a vehicle.

29. Investigators working on Plaintiff's behalf confirmed the presence of barriers to accessibility in the Arena's parking lots. For example:

   a. In the "Jim Shorkey Chrysler East Lot," the investigators found:
      i. Purportedly accessible parking spaces with slopes of up to 9.3%;
      ii. Access aisles with slopes of up to 7.9%; [8]
      iii. Purportedly accessible parking spaces are not identified with signs that include the International Symbol of Accessibility; [9]
      iv. No accessible spaces were designated as "van accessible"; [10]
      v. Some access aisles did not adjoin an accessible route; [11] and
      vi. Pathways were not stable, firm, and slip-resistant. [12]

   b. In the "Lower East Lot," the investigator found:
      i. Purportedly accessible parking spaces with slopes of up to 6.9%;
      ii. Access aisles with slopes of up to 7.4%;
      iii. No accessible spaces were designated as "van accessible"; and
      iv. Pathways were not stable, firm, and slip-resistant.

30. No accessible parking spaces were present in the "Red Lot" or the "Blue Lot."

---

[8] Section 502.4 of the 2010 Standards requires that the slopes of surfaces of accessible parking spaces and access aisles not exceed 1:48, or 2.1%.
[9] Section 502.6 of the 2010 Standards requires that accessible parking spaces be identified by signs with the International Symbol of Accessibility (*i.e.*, the familiar white wheelchair-using stick figure, usually on a blue background).
[10] Section 208 of the 2010 Standards requires that for every six or fraction of six accessible parking spaces provided, one must be comply with the requirements for van accessible spaces. Section 502.6 requires that such spaces be identified with a sign designating them as "van accessible."
[11] *See* 2010 Standards, Section 502.3.
[12] *See* 2010 Standards, Sections 403.2 and 302.1.

31. As a result of this discrimination throughout the Arena and its parking facilities, Plaintiff was left frustrated and humiliated.

## FIRST CAUSE OF ACTION
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT
**(29 U.S.C. § 794, *et seq.*)**

32. Plaintiff re-alleges and incorporates all previously alleged paragraphs as if fully set forth herein.

33. "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance..." Section 504; 29 U.S.C. § 794.

34. Plaintiff is a qualified individual for the purposes of Section 504. *See* 29 U.S.C. § 705(20)(B) (referencing 42 U.S.C. § 12103); *see also* 28 C.F.R. § 42.501.

35. Defendant, at all times relevant to the allegations contained herein, has received federal financial assistance for programs or activities as contemplated under Section 504.

36. Despite the clear mandate under Section 504, the SEA has excluded, and continues to exclude, Plaintiff from participating or benefiting fully from the programs, activities, services, and facilities at the Arena.

37. For the reasons herein stated, SEA has violated, and continues to violate, Section 504 by excluding Plaintiff from participating in the programs, activities, services, and facilities at the Arena solely on the basis of his disability.

38. This is caused by the barriers in the parking and paths of travel at the Arena.

39. As a direct and proximate cause of the aforementioned facts, Plaintiff has suffered and continues to suffer from humiliation, hardship, anxiety, and injury.

40. Because Defendant's conduct is ongoing, declaratory and injunctive relief is appropriate.

## SECOND CAUSE OF ACTION
## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT
**(42 U.S.C. § 12131, *et seq*.)**

41. Plaintiff re-alleges and incorporates all previously alleged paragraphs as if fully set forth herein.

42. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

43. Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131 and 28 C.F.R. § 35.104, and is eligible to participate in the Arena's programs, activities, services, and facilities.

44. Defendant SEA is a "public entity" as defined in 42 U.S.C. 12131 and 28 C.F.R. § 35.104, and all times relevant to this complaint has employed fifty or more persons.

45. Pursuant to the regulations implementing Title II of the ADA, SEA "shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150; *see also,* 28 C.F.R. §§ 35.149 & 35.151.

46. Accessible parking facilities and paths of travel constitute a vital program, service, or activity under Title II of the ADA.

47. Defendant has failed to ensure that its parking facilities and paths of travel, each when viewed in their entirety, are readily accessible to and usable by persons with impairments.

48. Defendant has discriminated against Plaintiff by failing to provide meaningful access to its parking facilities and paths of travel at the Arena.

49. The regulations implementing Title II of the ADA require that the SEA ensure all newly constructed or altered facilities be made readily accessible and usable by individuals with disabilities, if constructed or altered after January 26, 1992. 28 C.F.R. § 35.151(b).

50. Despite this clear mandate, the SEA has failed, and continues to fail, to ensure all newly constructed or altered facilities at the Arena are readily accessible and usable by individuals with disabilities.

51. As a direct and proximate result of the aforementioned acts, Plaintiff has been and continues to be injured.

52. Because Defendant's conduct is ongoing, declaratory and injunctive relief is appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows, including but not limited to:

a. A declaratory judgment that Defendant is in violation of the specific requirements of Title II of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs, scooters, or other mobility devices;

b. A declaratory judgment that Defendant is in violation of the specific requirements of Section 504 of the Rehabilitation Act described above, and the relevant implementing regulations of the Rehabilitation Act, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs, scooters, or other mobility devices;

c. A permanent injunction pursuant to 42 U.S.C. § 12133 (ADA) and 29 U.S.C. § 794a(a)(2) which directs the Defendant to:

   i. Ensure that parking facilities at PPG Paints Arena are readily accessible and usable by persons with impairments that affect mobility;

    ii. Undertake prompt remedial measures to eliminate physical barriers to access parking and to provide compliant means of ingress and egress from the parking facilities;

    iii. Maintain any existing accessible features of PPG Paints Arena parking facilities and means of ingress and egress therefrom;

    iv. Ensure that all future new construction and alteration of parking facilities and means of ingress and egress therefrom are fully compliant with federal accessibility standards; and

    v. Prepare a Self-Evaluation and a complete and publicly available plan regarding the accessibility of pedestrian programs, activities, services, and facilities in compliance with Title II of the ADA and Section 504 of the Rehabilitation Act.

d. Payment of costs of suit;

e. Payment of nominal damages, as the Court deems proper;

f. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12133 and 29 U.S.C. § 794a(b); and

g. The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: November 9, 2021

Respectfully Submitted,

/s/ *R. Bruce Carlson*
R. Bruce Carlson
Ian M. Brown
**CARLSON BROWN**
222 Broad St.
PO Box 242
Sewickley, PA 15143
bcarlson@carlsonbrownlaw.com
ibrown@carlsonbrownlaw.com
(412) 322-9243

Nicholas A. Colella
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
nickc@lcllp.com

*Counsel for Plaintiff*